# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CASE NO.

TRICIA SARMIENTO, individually
And on behalf of all others similarly situated,

    *Plaintiff*,

vs.

UNITED STATES OF
AMERICA DEPARTMENT OF
HOUSING AND URBAN
DEVELOPMENT and JULIA R.
GORDON, in her official capacity
as Assistant Secretary for Housing
and Federal Housing
Commissioner of the U.S.
Department of Housing and Urban
Development,

    *Defendants.*
_____/

**CLASS REPRESENTATION**

*JURY TRIAL REQUESTED*

## COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE RELIEF, AND DAMAGES

    TRICIA SARMIENTO (formerly Sanita) ("Plaintiff"), brings this class action under Rule 23 of the Federal Rules of Civil Procedure, and files Complaint against the UNITED STATES OF AMERICA DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT ("HUD") and JULIA R. GORDON ("GORDON"), in her official capacity as Assistant Secretary for Housing and Federal Housing Commissioner of the U.S. Department of Housing and Urban Development, on behalf of herself and all others similarly situated (collectively

referred to as "Defendant," and alleges as follows:

## INTRODUCTION

This lawsuit highlights a problem that affects thousands of American homeowners. Tricia Sarmiento seeks justice for homeowners who have been denied Mortgage Insurance Premium ("MIP") refunds upon the early termination of their FHA-insured mortgages. This class action lawsuit demands overdue refunds and reform of a system which has been plagued by failure.

HUD regulations require the refund of unearned MIPs when a mortgage is terminated early. Yet, despite this requirement, HUD has withheld hundreds of millions of dollars from homeowners using tactics that range from failing to identify eligible borrowers to imposing unnecessary bureaucratic hurdles. The lawsuit challenges these failures, including HUD's failure to automatically issue refunds, its reliance on inefficient communication methods, and its failure to recognize the representation of borrowers by attorneys.

The Office of Inspector General ("OIG") has confirmed the validity of complaints regarding HUD's handling of MIP refunds. Its audit exposed a systematic lack of adequate controls and procedures – concluding that HUD has failed to ensure that all eligible homeowners are identified and receive refunds they are owed. HUD has failed to implement OIG's recommendations.

This lawsuit is not just about reclaiming unearned premiums; it is a fight for transparency, accountability, and fairness. The federal agency's failure to uphold its duties has deprived thousands of homeowners of substantial refunds.

## NATURE OF ACTION

1.      This is an action for declaratory relief under 28 U.S.C. § 2201, equitable relief, and for damages, due to HUD failing to refund Mortgage Insurance Premiums ("MIPs") to FHA-insured mortgage borrowers upon early termination of their loans.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under the Declaratory Judgment Act 28 U.S.C. § 2201, to issue Mandamus pursuant to 28 U.S.C. § 1361, and under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

3.      This action is brought on behalf of Plaintiff and all others similarly situated (collectively "Borrowers"), pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4), seeking declaratory relief, injunctive relief, and/or damages in excess of Five-Million Dollars ($5,000,000.00), exclusive of interest, costs, and attorneys' fees.

4.      Venue is proper in this district pursuant to 5 USC §552(A)(4)(b) because Plaintiff resides with the Middle District of Florida, in Pasco, County.

5.      Venue is also proper in this district since "a substantial part of the events … giving rise to the claim occurred" in this district. *See* 28 U.S.C. § 1391(b)(2). More specifically, HUD's failures to refund MIPs to homeowners in this district, and HUD's failure to provide MIP refund applications to homeowners in this district, all in connection with residential homes in this District.

6.      All conditions precedent have occurred, been performed, or been waived.

## **THE PARTIES**

7.      There is complete diversity of citizenship between the parties.

8.      Plaintiff is an individual residing in Land O'Lakes, Florida. Plaintiff was charged an MIP as home buyer with an FHA-insured mortgage for her primary home located at 9020 Lunar Lane, Port Richey, Florida.

9.      HUD is an agency of the United States. One of HUD's missions is to increase access to affordable housing by requiring homeowners, often first-time home buyers or those who cannot afford to put 20% down, to pay MIPs as a condition to financing more than 80% of their home's value as an FHA-insured mortgage borrower.

10.      Defendant GORDON is the Assistant Secretary for Housing and Federal Housing Commissioner at HUD and is responsible for overseeing, implementing, and carrying out HUD's policies, programs, and operations supporting the nation's homebuyers and homeowners, including FHA's mortgage insurance programs. GORDON is being sued in her official capacity.

11.      HUD and Commissioner GORDON have a statutory obligation to affirmatively refund MIPs to FHA-insured mortgage borrowers upon early termination of their loans.

## COMMON ALLEGATIONS

12.    The Federal Housing Administration ("FHA"), a HUD administration, provides FHA-insured mortgages to homeowners – most often first-time home buyers.

13.    When an FHA mortgage is terminated early, within seven years of the purchase or refinancing of the property, the early termination results in an overpayment of the mortgage insurance premium ("MIP"), and HUD is required to refund the unearned MIP to the homeowner.

14.    **57 FR 15211** requires HUD to refund mortgage insurance premiums, stating:

> With respect to any mortgage subject to premiums under this section, ***the Commissioner shall refund all of the unearned premium charges paid on a mortgage upon termination*** of insurance by voluntary agreement or upon payment in full of the principal obligation of the mortgage before the maturity date. (emphasis added)

15.    Title 24, subtitle B, chapter 11, subchapter B, part § 203.283 (a) mandates:

> Refund of one-time MIP
>
> (a) The Commissioner ***shall provide for the refund to the mortgagor of a portion of the unearned MIP*** paid pursuant to § 203.280 if the contract of insurance covering the mortgage is terminated:
>
> \*\*\*
>
> (c) With respect to any mortgage subject to premiums under this section, the Commissioner shall refund all of the unearned premium charges paid on a mortgage upon termination of insurance by voluntary agreement or upon payment in full of the

principal obligation of the mortgage before the maturity date.[1]

16.    HUD is obligated to issue the required MIP refund automatically upon termination of the loan.

17.    However, HUD has a widespread common practice of not automatically refunding MIPs to Borrowers.

18.    Instead, upon request from the Borrower, HUD will mail an Application for Premium Refund or Distributive Share Payment form, also known as a HUD-27050-B form ("Refund Application"), to the Borrower. The Refund Application is partially completed by HUD with personal, mortgage, and MIP refund information from HUD records merged into the form template along with several agency administrative codes.

19.    The Borrower completes the form, including his or her social security number, telephone number, and a current address to which the refund should be mailed. The completed form must be signed, notarized if the refund exceeds $2,000 and returned to HUD with proof of ownership of the mortgaged property.

20.    Once HUD receives a completed Refund Application along with the Borrower's proof of identity, proof of address, and proof of ownership documents, it is required to refund the MIP.

21.    HUD is holding hundreds of millions of dollars of MIPs owed to Borrowers because it has failed to refund these MIPs as required.

---

[1].    *See also* in C.F.R. §§ 220.806, 203.283 and 266.608 (mandating the same duties and obligations)

22.    HUD's failures include, but are not limited to:

a.    Failing to identify Borrowers who are entitled to a refund;

b.    Failing to automatically issue refunds;

c.    Requiring Borrowers to affirmatively request a Refund Application and only providing Refund Applications by mail;

d.    Failing to automatically mail a Refund Application to Borrowers upon termination of their loan;

e.    When Refund Applications are mailed upon termination of a loan, failing to mail Refund Applications to the Borrower's current address when HUD knows the Borrower no longer lives at the FHA-insured property address;

f.    Failing to inform Borrowers or otherwise provide notice to them that they are owed a refund and that they must request a Refund Application in order to submit a claim for payment of the MIP refund;

g.    Failing to honor Borrowers' legal representatives' and attorneys' requests to have the Refund Application mailed or e-mailed to their attorneys;

h.    Failing to communicate with Borrowers' legal representatives and attorneys and otherwise failing to acknowledge or honor Borrowers' right to counsel;

i.    Failing to mail and/or timely mail Refund Applications when they

are requested by the Borrower or the Borrowers' legal representative's and attorneys;

j.  Requiring burdensome and unnecessary paperwork from Borrowers to deter them from submitting a Refund Application; and

k.  Refusing to email a refund application when requested, including after being advised by legal counsel that no mailed application was received by the Borrower, and even though HUD accepts completed applications by e-mail or fax.

23.  Because of these failures, as of 2020, there were 754,730 Borrowers with unclaimed refunds – 200,576 of which terminated more than 20 years ago.

24.  According to HUD's data, the total refund amount being held by HUD was $384.7 million as of 2020 – all earning interest that has been retained by HUD.

25.  Currently, in the State of Florida, approximately 56,699 Borrowers are owed refunds totaling $21,712,517.

### Office of Inspector General Finds HUD Does Not Have Adequate Controls to Issue Refunds

26.  In 2022, OIG audited HUD's oversight of FHA refunds based on complaints alleging that HUD was trying to make it difficult for Borrowers to obtain refunds or discourage them from pursuing the refunds, which are due to eligible homeowners from the unearned portion of the upfront mortgage insurance

premium paid.[2]

27.    OIG's audit found the complaints submitted to the HUD Office of Inspector General had merit.

28.    OIG found that HUD did not have adequate controls in place to ensure that refunds were appropriately tracked, monitored, and issued. Specifically, OIG found that HUD:

    a.  (1) did not ensure that the Borrower information for at least 23,579 loans with unpaid refunds totaling approximately $15.8 million was included in its public listing of unpaid refunds;

    b.  (2) did not adequately track the status of refunds;

    c.  (3) lacked policies and procedures for various stages of the refund process; and

    d.  (4); did not follow the requirements of the Paperwork Reduction Act of 1980.

29.    OIG found that HUD did not emphasize reviewing or monitoring the refund process to identify weaknesses and focused primarily on sending refund applications and issuing refunds only to homeowners who requested and returned the applications by mail.

30.    As a result, OIG determined that HUD could not ensure that it implemented a consistent refund process, and homeowners and third-party tracers

---

[2].    Office of Inspector General, United States Department of Housing and Urban Development, https://www.hudoig.gov/reports-publications/report/hud-did-not-have-adequate-controls-place-track-monitor-and-issue-fha (last visited March 2, 2024).

were not able to search for all refunds HUD owed, which may have reduced the chance for Borrowers for at least a sample set of 23,579 loans to obtain approximately $15.8 million in refunds.

31.    OIG recommended that the Deputy Assistant Secretary for Finance and Budget:

a.    (1) develop and implement written policies and procedures and controls for the refund process to address the deficiencies identified;

b.    (2) develop, and implement policies and procedures for locating Borrowers, a standard timeframe for mailing refund applications, and verifying the termination date;

c.    (3) research, develop, and implement policies and procedures to reduce the number of refunds that have remained unclaimed for an extended period;

d.    (4) develop and implement controls for the designation of legal representation for applicants; and

e.    (5) obtain approval under the Paperwork Reduction Act for the insert document mailed with the refund application and the Tracer Found Case form.

### Plaintiff's and Undersigned Counsel's Investigation and Identification of HUD's Failures

32.    Plaintiff's FHA property was located at 9020 Lunar Lane, Port Richey, Florida. Her loan terminated on April 2, 2001, when she sold her home.

Plaintiff is owed a refund of $1,023.71. Plaintiff did not automatically receive a refund. Plaintiff did not receive a Refund Application, nor was she provided any notification that she was required to request one or that she was even owed a refund. Plaintiff, upon learning that she was owed a refund and was required to request a Refund Application, requested through counsel a Refund Application on January 31, 2022. To date, she has not been provided with a Refund Application.

33.    Undersigned counsel, David La Croix, has been retained by at least several hundred Borrowers entitled to refunds. HUD consistently and systematically fails to honor counsel's representation, does not fully permit Borrowers to utilize retained counsel to assist in recovering their refunds, encourages Borrowers to not utilize retained counsel, refuses to mail Refund Applications to retained counsel, and even refuses to speak with retained counsel on the telephone regarding any Borrower refund.

34.    HUD's failure to allow Borrowers to be represented by counsel in the MIP refund process violates 5 U.S. Code §500(b), which mandates "[a]n individual who is a member in good standing of the bar of the highest court of a State may represent a person before an agency . . . ." In addition, HUD violates OIG guidance through its failure to acknowledge Borrowers' representation by counsel.

35.    Undersigned counsel has personally represented hundreds of Borrowers who have never received a Refund Application upon request.

36.    For numerous other applicants, HUD took a significant, unreasonable, and unjustified length of time, often 2-3 years, before a Refund

Application was received by the Borrower.

37.    On July 3, 2023, and on November 13, 2023, undersigned counsel submitted a FOIA request to Susan Betts, Deputy Assistant Secretary for Finance & Budget of HUD, requesting HUD's policies and procedures regarding the implementation of OIG's recommendations, specifically for facilitating the representation of Borrowers by counsel.

38.    On January 9, 2024, HUD eventually responded confirming that it has nothing responsive, evidencing that HUD has failed to implement the OIG's recommendations.

39.    Despite HUD publicly stating that it will "update policies and procedures based on a previous settlement regarding legal representation for applicants," it has failed to do so. Borrowers have requested a copy of the settlement referenced in the public response to OIG's recommendations. HUD has responded to these requests by denying the existence of any such settlement.

40.    HUD maintains a public website for people seeking to discover if any MIP refund is owed to them. On the website, HUD directs inquiring parties to enter their name, last name first. The name is then checked against an extremely long list HUD maintains of all the MIP refunds that are owed to Borrowers.

41.    Undersigned counsel's investigation has revealed that many Borrowers who are owed refunds are not listed or identified in HUD's records or website listing as a person owed a refund, and if their information is entered as instructed by HUD, they will not find their name as a person owed a refund. As a

result, these Borrowers have no way of knowing that they are owed a refund and wrongfully conclude no refund is due to them, and HUD cannot, and does not, send notice to these Borrowers whatsoever. This deficiency is due to failures including, but not limited to:

    a.  Failing to list and identify certain Borrowers whatsoever for certain years;

    b.  Failing to list both mortgagors' name and address for jointly owed properties on HUD's list of persons owed refunds;

    c.  Typographical errors including failing to accurately type in or enter Borrower data and contact information; and

    d.  Typographical errors including failing to accurately type in or enter Borrower data and contact information in the correct data fields.

## CLASS REPRESENTATION ALLEGATIONS

42.    Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs of this Complaint, as if fully set forth verbatim herein.

43.    Plaintiff brings this class action under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4) on behalf of herself and on behalf of a similarly situated "Class" or "Class Members."

44.    The prerequisites set forth in Federal Rule of Civil Procedure 23(a) have been met in order to maintain this matter as a class action because "(1) the members of the class are so numerous that separate joinder of each member is

impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class."

45.    Plaintiff brings this class action individually, and on behalf of a putative class of similarly situated Borrowers, and seeks class certification of the claims and issues pleaded in this Complaint, on behalf of the Class defined as follows:

> **All FHA-insured mortgage borrowers ("Borrowers") who are owed an unclaimed refund of Mortgage Insurance Premiums due to early termination of their loans through and until the date Notice is provided to the Class.**

46.    Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

47.    Plaintiff hereby reserves the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

48.     All Class Members were and are similarly affected by Defendant's conduct and business practice because they all were FHA-insured mortgage borrowers who are owed a refund of Mortgage Insurance Premiums due to early termination of their loans, but who have not received a refund of their money.

49.     This matter is appropriate for a class action pursuant to Federal Rule of Civil Procedure 23(b)(1), because "the prosecution of separate claims or defenses by or against individual members of the Class would create a risk of either: (A) inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interests."

50.     A class action is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2), which states: "the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate." Here, Defendant's consistent business practice affects all Class Members, including Borrowers who may obtain FHA-insured mortgage loans in the future. Defendant's wrongful business practice is continuing and on-going, making injunctive and declaratory relief appropriate to the Class as a whole.

51.     Plaintiff seeks class-wide injunctive relief, including but not limited to enjoining HUD from withholding Refund Request forms, requiring production of Refund Request forms to all Borrowers, revised and reformed procedures to facilitate the return of refunds, and requiring HUD to interact with Borrowers' counsel as it would with Borrowers themselves, including sending counsel refund applications upon request.

52.     In the alternative, a class action is proper pursuant to Federal Rule of Civil Procedure 23(b)(3), because questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy. Here, no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and Class Members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the

class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

53.    Based on the estimated number of Borrowers of refunds throughout Florida alone, it is readily apparent that the number of Borrowers is so large as to make joinder impractical. Despite the estimated size of the Class, Class Members may be notified of the class certification and pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice through the assistance of a Class Action Administrator. Plaintiff seeks to obtain a court approved and privately administered notice plan so that Borrowers will be notified of the refund they are owed and provided a simplified and un-burdensome claim process to obtain their refund. Defendant maintains business records of all the Borrowers who are owed refunds. All proposed Class Members are readily ascertainable by records maintained by Defendant. Using this information, the Class Members can be identified, and their contact information ascertained for purposes of providing notice to the Class.

54.    Questions of law and fact common to the Plaintiff and Class Members that predominate over questions affecting only individual members, include, *inter alia*:

55.    Whether Plaintiff and Class Members are owed refunds;

    a.  Whether HUD has identified all Borrowers who are entitled to a

refund;

b.  Whether HUD failed to automatically issue refunds;

c.  Whether HUD is failing to timely and properly mail Refund Applications to Borrowers and/or their counsel;

d.  Whether HUD is failing to honor Borrowers' legal representatives' and attorneys' requests for a Refund Application;

e.  Whether HUD is failing to communicate with Borrowers' legal representatives' and attorneys' and otherwise failing to acknowledge or honor Borrowers' right to counsel;

f.  Whether HUD is requiring burdensome and unnecessary paperwork from Borrowers that deters them from submitting a Refund Application, and/or in violation of the Paperwork Reduction Act of 1980;

g.  Whether HUD or the United States Treasury has retained earned interest on unclaimed refunds, and the amount of monies unjustly retained as a result of not properly and timely providing MIP refunds;

h.  Whether Plaintiff and Class Members are entitled to any other relief, including injunctive relief.

56.  The claims asserted by Plaintiff in this action are typical of the claims of Class Members as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class is common to each of the Class Members.

57.     Plaintiff and Plaintiff's counsel will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff's counsel has represented consumers in a wide variety of class actions where they were approved as class counsel.

58.     A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

59.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued regarding the management of this class action.

60.     Absent a class action, it would be highly unlikely that the representative Plaintiff or any other Class member would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected individual recovery.

61.     The questions of law or fact common to the respective Class Members predominate over questions of law or fact affecting only individual members.

62.     This predominance makes class action litigation superior to any other

method available for a fair and efficient litigation of the claims at issue in this matter.

63.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

64.     Plaintiff seeks attorney's fees and costs under Rule 23 decisional law, and pursuant to the Equal Access to Justice Act (EAJA) (5 U.S.C. Sec. 504; 28 U.S.C. Sec. 2412) or as otherwise authorized by law.

## COUNT I – WRIT OF MANDAMUS

65.     Plaintiff adopts and realleges paragraphs 1 through 64 as if fully set forth herein.

66.     28 U.S.C. § 1361 gives this United States district court jurisdiction of "an action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

67.     Here, the Commissioner of HUD has failed to perform its statutory and administratively required duties to ensure that MIP payments are refunded to Borrowers.

68.     The Commissioner's failure is an operational failure, not a planning level function.

69.     Plaintiff brings this Writ of Mandamus because she has no adequate remedy at law for the return of her MIP refund owed, and to compel the

Commissioner to carry out HUD's operational requirements.

70.     Plaintiff seeks to enforce HUD's nondiscretionary, plainly defined, and purely ministerial duties – indeed, there is no dispute that Plaintiff and Class Members are owed MIP refunds.

71.     Here, the Commissioner's duty is plainly prescribed, free from doubt and equivalent to a positive command – ***"the Commissioner shall refund all of the unearned premium charges paid on a mortgage upon termination."***

WHEREFORE, Plaintiff demands judgment in the form of mandamus to compel the Commissioner of HUD to refund all the unearned premium charges paid on all terminated mortgages.

## COUNT II – DECLARATORY JUDGMENT

72.     Plaintiff adopts and realleges paragraphs 1 through 64 as if fully set forth herein.

73.     Plaintiff seeks declaratory relief under 28 U.S.C. § 2201 to declare the rights and other legal relations of Plaintiff and Class Members.

74.     Plaintiff seeks a determination on whether:

a.    HUD has failed to refund MIP premiums as required by U.S. Code;

b.    HUD has failed to locate Borrowers;

c.    Plaintiff and Class Members must be refunded MIP premiums;

d.    HUD lacks adequate policies and procedures for the various stages of the refund process, including procedures that require additional documents from Borrowers;

e.   HUD fails to follow the requirements of the Paperwork Reduction Act of 1980;

f.   HUD has failed to recognize the representation of Borrowers by retained Counsel; and

g.   The Court may order a Court approved notice and administration plan, to be funded by HUD, to ensure that all Borrowers of unclaimed funds receive timely notice of their entitlement to a refund and the method to obtain it.

WHEREFORE, Plaintiff demands declaratory relief in the form of a judgment declaring Plaintiff's and Class Members' rights, and HUD's failure of its duties, with respect to the refund of all of the unearned premium charges paid on all terminated mortgages.

## COUNT III – UNJUST ENRICHMENT

75.   Plaintiff adopts and realleges paragraphs 1 through 64 as if fully set forth herein.

76.   This equitable cause of action is pleaded in addition to Plaintiff's legal remedies alleged in this Complaint.

77.   Plaintiff and Class Members conferred a benefit on Defendant, in that Defendant has unfairly retained Plaintiff's and Class Members' MIP refunds, and it has retained earned interest and other investment monies while in possession of these MIP refunds that should have been refunded upon termination of Plaintiff's and Class Members' loans.

78.     Defendant knew and appreciated that it earned interest and other investment monies from Plaintiff's and Class Members' monies.

79.     Defendant voluntarily accepted and retained earned interest and other investment monies, despite failing to fulfill its statutory duty to return MIP refunds upon termination of Plaintiff's and Class Members' loans.

80.     Instead of receiving their refunds upon termination of their loans, Plaintiff's and Class Members' monies remained in the possession of Defendant and Plaintiff and Class Members have been deprived of the benefit of using, investing, saving, and spending their money.

81.     Defendant should have credited the interest earned to each individual owner of the funds invested by HUD. Instead, HUD retained the money for itself.

82.     In the end, HUD's failure to return Plaintiff's and Class Members' monies caused Plaintiff and Class Members to pay more than they bargained for.

83.     Here, the circumstances render Defendant's retention of the retained earned interest and other investment monies earned on the unreturned MIP premiums inequitable and unfair unless Defendant is required to return the money that was improperly earned from Plaintiff and Class Members.

84.     The retained earned interest and other investment monies earned on the unreturned MIP premiums in the hands of Defendant should be paid to Plaintiff and Class Members.

85.    As a direct and proximate result of the foregoing, Plaintiff and Class Members have been damaged in the amount of the earned interest and other investment monies earned on the unreturned MIP premiums.

WHEREFORE, Plaintiff demands judgment for damages in the amount of the total earned interest and other investment monies accrued by Defendant, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable common benefit law.

## COUNT IV – INJUNCTIVE RELIEF

86.    Plaintiff adopts and realleges paragraphs 1 through 64 as if fully set forth herein.

87.    This equitable cause of action is pleaded in the alternative to Plaintiff's legal remedies alleged in this Complaint if it is found that Plaintiff has no remedy at law.

88.    Plaintiff seeks injunctive relief in the form of an order compelling specific performance requiring HUD to:

    a.  Refund all unearned MIP premiums;

    b.   Recognize legal representation of retained Counsel;

    c.  Implement and enforce adequate and un-burdensome policies and procedures for the various stages of the refund process;

    d.   Follow the requirements of the Paperwork Reduction Act of 1980; and

    e.  Fund and implement a Court ordered notice and administration plan,

to ensure that all Borrowers due MIP refunds receive timely notice of their entitlement to a refund and the method to obtain it .

WHEREFORE, Plaintiff demands injunctive relief in the form of a judgment compelling specific performance by HUD, with respect to the refund of all of the unearned premium charges paid on all terminated mortgages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for judgment and relief on all causes of action alleged above, as follows:

A.     An order certifying that this action may be maintained as a class action, certifying Plaintiff as representative of the Class, ordering Defendant to pay all costs associated with notice and administration of payment to the Class, and designating Plaintiff's attorneys as Class Counsel;

B.     Declaratory relief in the form of a judgment declaring Plaintiff's and Class Members' rights, and HUD's failure of its duties, with respect to the refund of all of the unearned premium charges paid on all terminated mortgages;

C.     Mandamus compelling the Commissioner of HUD to refund all the unearned premium charges paid on all terminated mortgages;

D.     Injunctive relief in the form of a judgment compelling specific performance by HUD with respect to the refund of all of the unearned premium charges paid on all terminated mortgages, including compelling HUD to perform its

statutory duty to refund all unearned mortgage premiums paid with regard to terminated mortgages; ;

    E.    An award of actual damages in an amount to be determined at trial, including for damages in the amount of the total earned interest and other investment monies accrued by Defendant with Plaintiff's and Class Members' monies;

    F.    An award of costs of this suit, including reasonable attorney's fees;

    G.    An award of pre- and post-judgment interest on any amounts awarded; and

    H.    Providing such further relief as may be just, appropriate, or proper.

### JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.


DATED: March 12, 2024        Respectfully Submitted,

          By:    */s/ Joshua H. Eggnatz*
                Joshua H. Eggnatz, Esq. (FBN: 0067926)
                E-mail: JEggnatz@JusticeEarned.com
                **EGGNATZ | PASCUCCI**
                7450 Griffin Road, Suite 230
                Davie, FL 33314
                Telephone: 954-889-3359
                Facsimile: 954-889-5913

                *Counsel for Plaintiff*

                Seth M. Lehrman, Esq. (FBN: 132896)
                E-mail: seth@lehrmanlaw.com
                **LEHRMAN LAW**
                951 Yamato Road, Suite 285

Boca Raton, FL 33431
Telephone: 954-304-9260

*Lead Trial Counsel for Plaintiff*

David La Croix, Esq. (FBN : 156740)
E-mail: davidlac333@gmail.com
7501 180th Street
McAlpin, FL 32062
Telephone: (386) 963-5729

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 12th day of March 2024, I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Middle District of Florida and served a true and correct copy thereof on all counsel of record using the CM/ECF System.

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz