UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TRICIA SARMIENTO**, individually
and on behalf of all others similarly situated

    Plaintiff,

v.　　　　　　　　　　　　　　　　Case No. 8:24-cv-00651-WFJ-AAS

**UNITED STATES OF AMERICA
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT**, and
**JULIA R. GORDON**, in her official
capacity as Assistant Secretary for Housing
and Federal Housing Commissioner of the
U.S. Department of Housing and Urban
Development,

    Defendants.
_____/

## ORDER

Before the Court is Defendants' motion to dismiss Plaintiff's amended complaint, Dkt. 27. Plaintiff has responded, Dkt. 30, and Defendants have replied, Dkt. 33. For the reasons explained below, the Court grants the motion to dismiss. The amended complaint is dismissed without prejudice.

### BACKGROUND

Plaintiff Tricia Sarmiento, individually and on behalf of a putative class, brings this action against the United States Department of Housing and Urban

1

Development ("HUD") and Julia Gordon in her official capacity as Federal Housing Commissioner. Dkt. 23 at 1. The complaint centers around HUD's alleged failure to refund mortgage insurance premiums ("MIPs") to which some borrowers are entitled. *Id.* at 2.

This action arises from the situation where homebuyers—often first-time or low-income homebuyers—purchase homes pursuant to a more affordable loan arrangement. *Id.* at 3. As part of that arrangement, the homebuyers borrow from lenders approved by the Federal Housing Administration ("FHA"), which is part of HUD. *Id.* at 2. The mortgaged loans these buyers obtain are further secured by mortgage insurance provided by the FHA. *Id.* This provision of insurance is authorized by the National Housing Act, 12 U.S.C. § 1701, *et seq.* Dkt. 27 at 3. Borrowers must purchase the mortgage insurance by paying all premiums in advance to the lender, which then pays HUD for providing the insurance. Dkts. 23 at 3; 27 at 3. If a loan is paid off prior to its maturity date, the borrower is entitled to a refund from HUD of a portion of the prepaid MIPs. Dkt. 23 at 3. That HUD shall provide for the refund of unearned MIP charges is provided for at 12 U.S.C. § 1709(c) and in the Code of Federal Regulations. *See* 24 C.F.R. §§ 203.283(a), 220.806, 266.608.

The complaint is a sweeping attack on HUD's issuance of these refunds—"demand[ing] overdue refunds and reform of a system which has been plagued by failure." Dkt. 23 at 2. The complaint challenges HUD's failure to: notify borrowers

of their entitlement to refunds, notify borrowers that they must request refund applications, provide borrowers refund applications upon request, recognize borrowers' attorneys, and identify borrowers eligible for refunds. *Id.* at 4. In essence, Plaintiff complains that "[i]nstead of automatically refunding MIPs to Borrowers, . . . HUD has created its own arbitrary procedural requirements," which HUD sometimes still fails to follow effectively. *Id.* at 12, 14. The counts alleged are: (1) a claim for relief under the Administrative Procedure Act ("APA"), (2) conversion, (3) unjust enrichment, and (4) a claim for relief under 42 U.S.C. § 1983. *Id.* at 28–35. Plaintiff seeks declaratory and injunctive relief, as well as a judgment for damages in the amount of unearned MIPs plus interest they accrued. *Id.* at 35–36.

As to Ms. Sarmiento specifically, her FHA loan terminated in 2001. *Id.* at 18. She is owed a refund of $1,023.71 in unearned MIP charges, as confirmed by HUD's public records identifying borrowers entitled to a refund. *Id.* at 18, 21. One sentence in the amended complaint asserts that "[a]s of the date of the filing of this lawsuit, [Ms. Sarmiento] has not been provided with a Refund Application despite multiple requests." *Id.* at 18. The parties do not dispute that she is now in possession of a refund application that she has not completed, but do dispute when she first received an application form. Dkt. 27 at 9.

Defendants' motion advances a number of arguments for dismissal. Below, the Court will address Defendants' arguments that Plaintiff lacks standing and that

3

the Court lacks jurisdiction over Plaintiff's APA, conversion, and section 1983 claims. *Id.* at 7–18. The Court will lastly address Defendants' argument that Plaintiff has not stated a claim for unjust enrichment. *Id.* at 21–23. Ultimately, the motion to dismiss is granted.

## LEGAL STANDARD

A defendant may challenge a court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). These challenges take two forms: "facial attacks" and "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). "Facial attacks" on the complaint take the allegations therein as true, and "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Id.* (citation and internal quotation marks omitted). "Factual attacks" challenge the very existence of subject matter jurisdiction, affording no presumption to the plaintiff's allegations and permitting consideration of matters outside the pleadings. *Id.*

A defendant may also challenge a pleading for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The allegations in the complaint are accepted as true, and must offer more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter . . .

to state a claim to relief that is plausible on its face." *Ashcoft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

## DISCUSSION

The Court is doubtful as to Ms. Sarmiento's standing, but regardless finds that it lacks jurisdiction over her APA, conversion, and section 1983 claims. The Court lastly finds that Plaintiff has not stated a claim for unjust enrichment.

I. **Standing**

Defendants' motion to dismiss argues that Ms. Sarmiento lacks standing because HUD has not caused her alleged injuries. Dkt. 27 at 8. Defendants contend that Ms. Sarmiento is currently in possession of the HUD-27050-B refund form, but has failed to submit it. *Id.* at 8–9. It is her own failure to provide her information to HUD that is the cause of her injury. *Id.* Plaintiff's response recharacterizes her broad allegations in the complaint, narrowly arguing that Plaintiff's injury is HUD's failure to provide a refund application despite multiple requests, based on the one sentence in the amended complaint that alleges same. Dkt. 30 at 9.

Plaintiffs bringing a case or controversy before the judiciary must have "the irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). Article III standing is established with three elements: (1) the plaintiff suffered an "injury in fact" that is both concrete and particularized, and

actual or imminent, (2) the injury is traceable to the challenged action of the defendant, and (3) a favorable decision will likely redress the injury. *Id.* at 560–61 (citations and internal quotation marks omitted). A controversy is not justiciable if the alleged injury is caused by the "independent action of some third party not before the court," or caused by the plaintiff herself. *Swann v. Sec'y, Georgia*, 668 F.3d 1285, 1288 (11th Cir. 2012) (finding inmate lacked standing to challenge officials' refusal to send absentee ballots to county residents in county jail under Georgia law because inmate never provided address of jail where he wanted absentee ballot delivered); *see also Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) (finding class members lacked standing to challenge telecom company's failure to maintain internal do-not-call list if they never requested to be on do-not-call list).

If Ms. Sarmiento's alleged injury is that she has not received a refund, she has not requested one using HUD's form to do so. Dkt. 27 at 8–9. As in *Swann*, Plaintiff cannot claim HUD has harmed her by failing to issue a refund when she has not provided the requisite information to HUD. 668 F.3d at 1288. She would be the cause of her own injury, precluding a finding of standing. *Id.*

If, however, Ms. Sarmiento's alleged injury is that HUD had not provided her a refund application despite multiple requests, the issue may survive its apparent mootness. Plaintiff admitted that "[i]n this litigation, HUD provided Sarmiento with

6

her Application." Dkt. 30 (Plaintiff's response) at 10. But Plaintiff cites to *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *10 (11th Cir. Aug. 30, 2023) for the proposition that she is an exception to the general class action mootness rule. Usually, a putative class action is moot if no named plaintiff has a live claim at the time of class certification. *Id.* at *9. But if the defendant is "picking off" the named plaintiffs' claims, they may retain standing to represent the class. *Id.* at *10. On the one hand, there is no indication that HUD providing a refund form to Ms. Sarmiento—the only named plaintiff in this lawsuit—was its attempt to pick her off as class representative and extinguish an entire class. HUD has, in fact, still *not* refunded Plaintiff even though the exact amount of unearned MIP that HUD owes her is apparently not in dispute. This can hardly be described as a dogged attempt to avoid class certification. On the other hand, the "picking off" exception requires only that "the defendant be capable of 'picking off' the named plaintiff's claims," and that "the named plaintiff be 'diligent' in pursuing the class claims." *Id.* at *12. It is entirely possible that HUD could try to "pick off" any named plaintiff in this lawsuit by sending them a refund form such that the class claims would be repeating yet evading review. *Id.* At this early juncture, the Court feels it premature to decide that the "picking off" exception is inapplicable.

7

In any event, Ms. Sarmiento's minimal and debatable standing is inconsequential. As discussed below, the Court either lacks jurisdiction over or finds that Plaintiff has failed to state all of her claims.

## II. Administrative Procedure Act

The Administrative Procedure Act provides that courts may "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The APA also provides that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." § 706(1). Agency action is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." § 551(13).

### a. Final agency action

Defendants' motion to dismiss first argues that Plaintiff's claim is not ripe because she has not yet applied for a refund and been denied, *i.e.*, no final agency action has occurred for a court to review. Dkt. 27 at 11. Plaintiff responds that the complaint does not challenge a final agency action, but rather challenges agency inaction. Dkt. 30 at 10.

Agency action is required to be "final" for a court to review it. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which

there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."). To be "final," agency action must: (1) "mark the consummation of the agency's decisionmaking process," and (2) determine "rights or obligations" or result in "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations and internal quotation marks omitted).

If Ms. Sarmiento's only alleged injury is that she has not yet received a refund, she needs to apply for and complete that decisionmaking process before she can bring that claim. *See Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1340 (11th Cir. 2005) ("National's claim is not ripe because it failed to obtain a final denial of its applications."). But because (one sentence of) Plaintiff's complaint alleges that "she has not been provided with a Refund Application despite multiple requests," there exists a challenge to agency inaction. Dkt. 23 at 18. The Court must determine whether it is an agency inaction subject to judicial review.

### b. Programmatic attack / challenge to agency inaction

Defendants argue that the complaint's programmatic attack on HUD's MIP refund process is not the proper subject of a lawsuit. Dkt. 27 at 12. Plaintiff responds that a court can compel nondiscretionary, mandatory actions agencies are required

9

to take, and that HUD "shall" refund MIPs is one such action. Dkt. 30 at 15 (citing *Salazar v. King*, 822 F.3d 61, 77 (2d Cir. 2016) (noting that the word "shall" connotes a mandatory requirement); *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015) (same)).

The Supreme Court has made clear that lawsuits challenging an agency's entire program are not the proper avenue for improving said program. In *Lujan*, the plaintiffs filed their complaint challenging the Bureau of Land Management's "land withdrawal review program," which nebulously referred to the many operations of the BLM in connection with certain land management objectives. 497 U.S. at 890. The Court explained how the plaintiffs alleged that "violation of the law is rampant within this program," and the Court agreed that was "[p]erhaps so. But respondent cannot seek *wholesale* improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *Id.* at 891 (emphasis in original).

*Norton v. Southern Utah Wilderness Alliance* ("*SUWA*"), 542 U.S. 55, 61 (2004) addressed the related issue of agency inaction. The Court reasoned that a claim alleging agency inaction can only proceed if the agency failed to take a discrete action it was legally required to take. *SUWA*, 542 U.S. at 64. The Court provided an illustrative example:

> The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law). Thus, when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be. For example, 47 U.S.C. § 251(d)(1), which required the Federal Communications Commission "to establish regulations to implement" interconnection requirements "[w]ithin 6 months" of the date of enactment of the Telecommunications Act of 1996, would have supported a judicial decree under the APA requiring the prompt issuance of regulations, but not a judicial decree setting forth the content of those regulations.

*Id.* at 65 (emphasis in original). Courts thus simply have the power to decree what the law requires, so as to "protect agencies from undue judicial interference with their lawful discretion." *Id.* at 66.

The complaint as it is fully pled seeks the sort of sweeping reform the Court is powerless to give. Indeed, it seeks a determination on "whether HUD lacks adequate policies and procedures for the refund process," and "whether the Court may order a Court approved notice and administration plan," Dkt. 23 at 30, which is plainly impossible per *Lujan* and *SUWA*. Ms. Sarmiento may not challenge as broad of a program or policy as existed in *Lujan* and *SUWA*, but this Court similarly cannot offer Plaintiff the relief requested without overhauling how HUD issues MIP refunds. This is impermissible.

Even considering Plaintiff's more pointed attacks based on the laws requiring refunds and HUD's alleged failures to furnish refund forms, this Court cannot compel anything Plaintiff seeks. Analogous to *SUWA*'s example, this Court could compel only what the laws require: that HUD shall provide for the refund of MIPs. *See* 12 U.S.C. § 1709(c)(1) ("[T]he Secretary shall provide for refunds, where appropriate, of a portion of the premium paid . . . in accordance with procedures established by the Secretary which take into account sound financial and actuarial considerations."); *e.g.*, 24 C.F.R. § 203.283(a) ("The Commissioner shall provide for the refund to the mortgagor of a portion of the unearned MIP . . . ."). HUD *does* provide for the refund of MIPs; Ms. Sarmiento currently possesses the application that achieves that. The Court is not at liberty to further direct the specific manner in which it is done. *SUWA*, 542 U.S. at 65.

Neither can the Court direct a swift procurement process for HUD's refund applications, which, moreover, are not demanded by any law or regulation to which the Court could cite. *Id.* The Court is not privy to HUD's internal shortcomings that cause its allegedly untimely distribution of refund forms. Those are the sort of resource and manpower allocation decisions that belong to HUD. Indeed, Defendants' motion to dismiss details some of the procedures HUD employs to distribute refunds in compliance with the National Housing Act, all of which are squarely within HUD's expertise. For example, per HUD's explanatory "Mortgagee

12

Letters," certain loan types closed between 1994 and 2001 are "only eligible for a cash refund if terminated within seven years of endorsement." Dkt. 27 at 4. Loans acquired after 2004 are not eligible for cash refunds; and it is actually lenders that initiate a timely refund process by providing a HUD-27050-A form containing a mortgagor's current mailing address to HUD, which then terminates the existing insurance contract, determines refund eligibility, and sends the HUD-27050-B form to the mortgagor to verify identity. *Id.* The Court could not control any of these internal functions without "injecting the judge into day-to-day agency management," which is patently forbidden. *SUWA*, 542 U.S. at 66–67.

Plaintiff cites to *Salazar* for general principles, but the facts therein are distinguishable. In *Salazar*, former students at for-profit beauty schools brought a class action against the Secretary of the Department of Education. 822 F.3d at 64. Plaintiffs alleged that the DOE failed to comply with regulations requiring it to temporarily suspend collection of student loans and notify borrowers of their discharge rights if the DOE received reliable information that the schools fraudulently certified a student's eligibility to borrow. *Id.* at 64–65. The court found that sufficient law existed to permit judicial review of the plaintiffs' claims under the APA. *Id.* at 77. First, the DOE's own informal agency guidance helped identify evidence to consider when deciding if a borrower may be eligible for loan discharge. *Id.* at 80. Next, regulations, which the DOE was required to promulgate by statute,

required that the DOE shall suspend enforcement efforts and inform the borrower how to request a discharge. *Id.* at 79. The applicable statute ultimately provided that a borrower's liability on the loan shall be discharged if their eligibility to borrow was falsely certified by the school. *Id.* at 77.

The instant case is distinguishable for at least two reasons. First, the DOE's regulations in *Salazar* specifically required the DOE to suspend loan enforcement efforts and inform the borrower how to request a discharge. *See* 34 C.F.R. § 685.215(d)(1) ("[T]he Secretary provides the borrower an application and an explanation of the qualifications and procedures for obtaining a discharge. The Secretary also promptly suspends any efforts to collect from the borrower on any affected loan."); *accord* 34 C.F.R. § 682.402(e)(6)(i). HUD's regulations directing the refund of MIPs contain no such specific notice requirement, *i.e.*, there exists no similar legally enforceable obligation to provide an application and explanation of the procedures for obtaining a refund. *See SUWA*, 542 U.S. at 65.

Second, *Salazar* would have courts review agency action that culminates in loan suspension and/or discharge. 822 F.3d at 82. That is, courts would review agency decisionmaking and resultant action that has concluded—ending in either total or temporary cessation of loan obligations. But here, that HUD must issue refunds is just the beginning of how that process actually happens. The Court is not

14

aware of, or capable of supervising, HUD's internal processes for issuing refunds. Those are HUD's duties.

In sum, an agency action subject to judicial review does not exist here. Plaintiff has not been denied a refund, the sending of refund applications is not a final and legally enforceable agency action, and the Court cannot reform HUD's entire MIP refund process. Plaintiff's APA claim is dismissed.

### III.  Conversion

Defendants argue that the Court lacks jurisdiction over Plaintiff's conversion claim because the Federal Tort Claims Act ("FTCA") controls tort claims against the government, and Plaintiff (1) failed to present her claim to HUD pre-lawsuit as required by the FTCA, and (2) failed to sue the correct defendant, as the United States is the only proper defendant under the FTCA. Dkt. 27 at 15–17. Plaintiff responds that HUD's tort claims notification process is not applicable to MIP refunds, which are returned according to their own scheme. Dkt. 30 at 24–25. Plaintiff contends that the FTCA is inapplicable because HUD is in possession of the MIP monies, rather than the "general treasury account." *Id.* at 25. This is also, Plaintiff argues, what makes HUD the appropriate defendant. *Id.*

The FTCA vests district courts with exclusive jurisdiction over civil actions against the United States for injury or loss of property "caused by the negligent or

wrongful act or omission of any employee of the [g]overnment . . . ." 28 U.S.C. § 1346(b)(1). Conversion is a tort to which the FTCA applies. *See JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1263 (11th Cir. 2000) (applying FTCA to conversion claim); *Telecenter, Inc. v. FDIC ex rel. First Com. Bank of Tampa Bay*, No. 8:12-cv-543-T-36TGW, 2015 WL 403186, at *7–8 (M.D. Fla. Jan. 28, 2015) (same). Although a statute may authorize a federal agency to sue and be sued in its own name, that authority "shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title." 28 U.S.C. § 2679(a). In other words, FTCA tort suits are the exclusive remedy for claimants, and the defendant federal agency cannot be sued in its own name. *F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994). "[T]he FTCA authorizes claims only against the United States." *Trupei v. United States*, 304 F. App'x 776, 782 (11th Cir. 2008).

The FTCA applies here and defeats Plaintiff's conversion claim. First, HUD's ability to "sue and be sued" in 12 U.S.C. § 1702 is irrelevant to Ms. Sarmiento's conversion claim. 28 U.S.C. § 2679(a). Second, the only proper defendant in an FTCA action is the United States. *Trupei*, 304 F. App'x at 782; *Telecenter*, 2015 WL 403186, at *8. Because Plaintiff's conversion claim is alleged against only HUD and Ms. Gordon, it is invalid on its face. It is dismissed.

**IV.    42 U.S.C. § 1983**

Plaintiff consents to the dismissal of her 42 U.S.C. § 1983 claim without prejudice, Dkt. 30 at 3, so the Court will do so. The Court cautions, however, that a section 1983 claim cannot successfully be lodged against HUD and Ms. Gordon here. Defendants correctly state in their motion to dismiss that section 1983 provides for a cause of action against state, not federal, officials. *See* 42 U.S.C. § 1983 (permitting lawsuits against persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia"); *Wright v. Butts*, 953 F. Supp. 1343, 1348 (M.D. Ala. 1996) ("[Section 1983] does not apply to individuals acting under federal law."); *Hurt v. Philadelphia Hous. Auth.*, 806 F. Supp. 515, 524 (E.D. Pa. 1992) ("[P]laintiffs cannot sue the United States or HUD under § 1983."). Because HUD and Ms. Gordon are federal beings, not acting under color of state law, Plaintiff's section 1983 claim against them is readily dismissed.

V.  **Unjust enrichment**

Defendants argue that unjust enrichment is not a viable claim in this case because federal common law governs this claim, and when Congress has already created a comprehensive regulatory scheme that occupies the field, federal common law claims are inapplicable. Dkt. 27 at 21–22. There is already a scheme for issuing MIP refunds, so Plaintiff cannot circumvent that with an unjust enrichment claim. *Id.* at 22. Plaintiff responds that Congress did not create the comprehensive

17

regulatory scheme for the return of MIP refunds—it simply directed that HUD shall return them. Dkt. 30 at 26. Defendants reply that the MIP is a creation of federal law, and discretion has been delegated to the agency to implement policies for administering the refunds. Dkt. 33 at 8.

When "the authority and duties of the United States as sovereign are intimately involved," then "our federal system does not permit the controversy to be resolved under state law." *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981). This is one such instance where the obligations of the United States are intimately involved: HUD (a federal agency) allegedly ineffectually refunds MIPs (prepayments to a federally created loan plan) under its (federal) regulatory scheme for doing so. Accordingly, it is inappropriate to resolve this putative class action's unjust enrichment claim under Florida law. *Id.*

Federal common law, however, "is subject to the paramount authority of Congress" and "is resorted to in the absence of an applicable Act of Congress." *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 313–19 (1981) (citations and internal quotation marks omitted) (declining to apply federal common law when Congress "has occupied the field through the establishment of a comprehensive regulatory program supervised by an expert administrative agency"); *see also Fla. Farm Bureau Gen. Ins. Co. v. Jernigan*, No. 3:09cv145/MCR/EMT, 2010 WL 3927816, at *4–5 (N.D. Fla. Sept. 30, 2010) (rejecting a federal common law claim

18

for unjust enrichment to recover erroneously paid funds because Congress established "a comprehensive regulatory scheme that includes an integrated system of procedures for enforcement," so "the court must presume that any remedy not included thereunder was deliberately omitted and that no additional remedies are authorized") (internal quotation marks omitted).

An unjust enrichment claim is not permissible in this case, where HUD has created an entire scheme for the recovery of MIPs. The MIPs at issue are created by federal statute. *See* 12 U.S.C. § 1709(c)(1) ("The Secretary is authorized to fix premium charges for the insurance of mortgages . . . ."). 12 U.S.C. § 1709(c) and the relevant regulations in the Code of Federal Regulations provide that HUD shall refund the unearned premium charges. HUD has designed the policies and procedures to effectuate that. Dkt. 27 at 3–4. Because a federal regulatory scheme exists that governs MIP refunds, Ms. Sarmiento cannot circumvent that process with a common law unjust enrichment claim. *See Milwaukee*, 451 U.S. at 313–19; *Jernigan*, 2010 WL 3927816, at *4–5. It is dismissed.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

Defendants' motion to dismiss, Dkt. 27, is granted. Plaintiff's amended complaint is dismissed without prejudice. If Plaintiff wishes, a second amended complaint must be filed within twenty-one days.

**DONE AND ORDERED** at Tampa, Florida, on November 15, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record